DECISION
{¶ 1} These consolidated cases are original actions in mandamus. In case No. 05AP-566, relator, RMS of Ohio, Inc., has requested a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding respondent, Laurie L. Smith, temporary total disability ("TTD") compensation beginning August 24, 2004, and to enter a new order denying said compensation. In case No. 05AP-785, relator, Laurie L. Smith, requests a writ of mandamus ordering the commission to amend its award so that TTD compensation is also awarded for the period of June 20, 2004 to August 23, 2004.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny both requests for writs of mandamus. (Attached as Appendix A.) No objections have been filed to that decision.
 {¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, and based upon an independent review of the evidence, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law. In accordance with the magistrate's decision, the requested writs are denied.
Writs of mandamus denied.
Klatt, P.J., and McGrath, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. RMS of Ohio, Inc., : Relator, : v. : No. 05AP-566 Industrial Commission of Ohio : (REGULAR CALENDAR) and Laurie L. Smith, : Respondents. : State of Ohio ex rel. Laurie L. Smith, : Relator, : v. : No. 05AP-785 Industrial Commission of Ohio : (REGULAR CALENDAR) and RMS of Ohio, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on December 21, 2005 Gibson Robbins-Penniman, and Shareef Rabaa, for relator RMS of Ohio, Inc.
Jim Petro, Attorney General, and Derrick Knapp, for respondent Industrial Commission of Ohio.
Agee, Clymer, Mitchell Laret, and Joffre S. Laret, for respondent Laurie L. Smith.
 IN MANDAMUS {¶ 4} These two original actions have been consolidated. In case No. 05AP-566, relator, RMS of Ohio, Inc. ("RMS"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding respondent Laurie L. Smith temporary total disability ("TTD") compensation beginning August 24, 2004, and to enter an order denying said compensation. In case No. 05AP-785, relator, Laurie L. Smith, requests a writ of mandamus order the commission to amend its award so that TTD compensation is also awarded for the period June 20 to August 23, 2004.
Findings of Fact:
 {¶ 5} 1. On May 16, 2003, Laurie L. Smith ("claimant") sustained an industrial injury while employed as a home health care worker for RMS, a state-fund employer. On that date, as she was helping a client from a couch, the client pulled claimant causing her to fall. On May 17, 2003, claimant presented to a hospital emergency room complaining of low back and shoulder girdle pain.
 {¶ 6} 2. The industrial claim was initially allowed for "bilateral (shoulder) girdle sprain; lumbar sprain," and was assigned claim number 03-827185.
 {¶ 7} 3. Following a July 22, 2003 hearing, a district hearing officer ("DHO") awarded TTD compensation beginning May 17, 2003 through the hearing date and to continue following submission of further medical evidence. The DHO order was not administratively appealed. RMS paid claimant wage continuation benefits in lieu of TTD compensation.
 {¶ 8} 4. On January 27, 2004, at RMS's request, claimant was examined by Manhal Ghanma, M.D. In his report, dated February 2, 2004, Dr. Ghanma opined that the allowed conditions of the industrial claim have reached maximum medical improvement ("MMI").
 {¶ 9} 5. On March 24, 2004, citing Dr. Ghanma's report, RMS moved for termination of TTD compensation on grounds that the industrial injury had reached MMI.
 {¶ 10} 6. Following a May 5, 2004 hearing, a DHO issued an order terminating TTD compensation effective May 5, 2004, on grounds that the industrial injury had reached MMI. The decision was based upon Dr. Ghanma's report.
 {¶ 11} 7. Claimant administratively appealed the DHO order of May 5, 2004; however, claimant later dismissed her appeal.
 {¶ 12} 8. On June 22, 2004, claimant was examined by orthopedic surgeon Michael S. Lefkowitz, M.D. In his June 22, 2004 office note, Dr. Lefkowitz gives his impression of "right shoulder rotator cuff tendonitis." On June 22, 2004, Dr. Lefkowitz further wrote:
* * * Laurie presents for reevaluation of her right shoulder. She has had a long history of problems with her shoulder since initially injuring it on May 16th, 2003 at work. She was lifting something up when she felt something pull in her shoulder. She has been followed primarily by Dr. Sardo since that time. She was last seen here on April 8th of this year. Dr. Sardo did a subacromial injection, which helped a lot for 10-days, but wore off and she is now again having severe pain. It is hard to sleep on it. She has had no history of problems with her shoulder and wants to go ahead and proceed with surgery on her shoulder. * * *
* * *
* * * I pointed out that the most reliable test for determining whether a patient will improve with subacromial decompression would be a subacromial injection. I further pointed out that if we did her surgery and we alleviated her shoulder pain that I felt that she would be able to return to her previous occupation without restrictions and also would be able to wean her pain medicines. With these expectations she has insisted that she wants to go ahead and proceed with surgery. We did discuss the risks and the alternatives and at this point we will seek BWC allowance for rotator cuff decompression. * * *
 {¶ 13} 9. On July 13, 2004, claimant was examined by her attending physician James J. Sardo, M.D. In his July 13, 2004 office note, Dr. Sardo wrote:
ASSESSMENT:
[One] Chronic right shoulder strain with subacromial bursitis. Will have her submit a request to have this condition added to her claim.
[Two] Chronic lumbar strain with underlying degenerative disk disease. It is my medical opinion that the degenerative disk disease was aggravated.
[Three] Disability.
* * *
Recommend adding subacromial bursitis of the right shoulder and lumbar degenerative disc disease to her claim. * * * Will submit a request for the subacromial bursa decompression by Dr. Lefkowitz. * * *
 {¶ 14} 10. On July 15, 2004, Dr. Sardo wrote:
Mrs. Smith continues with right shoulder pain. She was evaluated by Dr. Michael Lefkowitz, who has recommended a rotator cuff decompression. Working diagnosis is right shoulder rotator cuff tendonitis. This condition is within a reasonable degree of medical probability causally related to the industrial injury on 05/16/03. At that time, she was helping a client up out of a couch and developed pain in the right shoulder.
Also, she is continuing to have lower back pain, and her lumbar spine x-ray reveals degenerative disk disease at several levels. It is within a reasonable degree of medical probability that the degenerative disk disease was aggravated by her industrial injury.
I recommend having rotator cuff tendonitis 726.10 and aggravation of lumbar degenerative disc disease 722.52 added to her claim.
 {¶ 15} 11. On August 20, 2004, citing the medical evidence from Dr. Sardo dated July 13 and July 15, 2004, and the June 22, 2004 office note of Dr. Lefkowitz, claimant moved for additional claim allowances. Specifically, claimant moved that her claim be additionally allowed for "rotator cuff tendinitis[,] subacromial bursitis and aggravation of pre-existing lumbar degenerative disc disease."
 {¶ 16} 12. Following a December 2, 2004 hearing, a DHO issued an order additionally allowing the claim for "rotator cuff tendonitis right shoulder, subacromial bursitis right shoulder," based upon the July 15, 2004 report of Dr. Sardo and the June 22, 2004 report of Dr. Lefkowitz. The DHO denied the request for an additional allowance for "aggravation of pre-existing lumbar degenerative disc disease."
 {¶ 17} 13. RMS administratively appealed the DHO order of December 2, 2004. Following a January 20, 2005 hearing, a staff hearing officer ("SHO") affirmed the DHO order of December 2, 2004.
 {¶ 18} 14. On February 16, 2005, another SHO mailed an order refusing RMS's administrative appeal from the SHO order of January 20, 2005.
 {¶ 19} 15. Earlier, on January 3, 2005, claimant moved for reinstatement of TTD compensation beginning May 5, 2004, the date it had previously been terminated on MMI grounds. In support, claimant cited Dr. Lefkowitz's June 22, 2004 office note and Dr. Sardo's July 13, 2004 office note (described above). In addition, claimant cited Dr. Sardo's office notes dated March 9, August 10, October 7 and November 4, 2004. No C-84 reports were cited.
 {¶ 20} 16. Following a February 24, 2005 hearing, a DHO issued an order denying claimant's January 3, 2005 motion for TTD compensation.
 {¶ 21} 17. Claimant administratively appealed the DHO order of February 24, 2005.
 {¶ 22} 18. Following an April 20, 2005 hearing, an SHO issued an order stating that the DHO order is modified. The SHO order of April 20, 2005 states:
It is the finding of the Staff Hearing Officer that temporary total disability compensation shall be reinstated and paid from 08/24/2004 (date of C-86 motion filed 08/24/2004 requesting the allowance of additional conditions) through 04/20/2005 and to continue upon submission of additional medical evidence. The injured worker was at maximum medical improvement prior to 08/24/2004.
* * *
It is further the finding that "new and changed" circumstances have occurred in this claim warranting an [sic] reinstatement of temporary total disability benefits. The C-86 motion filed 08/24/2004 requesting the allowance of additional conditions was granted to the extent that new conditions were eventually allowed by the Staff Hearing Officer order of 01/20/2005. Therefore, a reinstatement of temporary total disability compensation is in order effective 08/24/2004. The C-84 reports from Dr. James Sardo on file from 2004-2005 support the award of temporary total disability compensation. Although Dr. Sardo stated at the top of the C-84 that position of employment at the time of the injury was as a cashier, this does not defeat the purpose of the multiple C-84 reports. The injured worker states this was a typographical error and Dr. Sardo was well aware of her job as a health care worker when he signed the C-84 estimates of disability. In addition, the job of cashier would be a much lighter type work than as a health care worker which involves repetitive heavy lifting and more physically demanding type of work. Therefore, even if Dr. Sardo believed she formerly worked as a cashier when she was injured, his estimate would be even more restrictive than if he had placed health care worker at the top of the C-84 reports.
 {¶ 23} 19. Both claimant and RMS administratively appealed the April 20, 2005 SHO order. Both appeals to the three-member commission were refused by SHO orders mailed May 13 and May 20, 2005.
 {¶ 24} 20. On June 3, 2005, RMS of Ohio, Inc., filed case No. 05AP-566. On July 28, 2005, claimant, Laurie L. Smith, filed case No. 05AP-785. As previously noted, these cases have been consolidated.
Conclusions of Law:
 {¶ 25} It is the magistrate's decision that this court deny the requests for writs of mandamus, as more fully explained below.
 {¶ 26} Effective August 22, 1986, R.C. 4123.56(A) provides that TTD compensation "shall not be made for the period * * * when the employee has reached the maximum medical improvement." It further provides:
* * * The termination of temporary total disability, whether by order or otherwise, does not preclude the commencement of temporary total disability at another point in time if the employee again becomes temporarily totally disabled.
Supplementing the statute, Ohio Adm. Code 4121-3-32(A)(1) provides:
"Maximum medical improvement" is a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function.
 {¶ 27} When an allowed condition of the claim has been found by the commission to be at MMI, only a worsening of that allowed condition, accompanied by a prognosis that the worsening is only temporary, will support further TTD based upon that allowed condition. State ex rel. Josephson v. Indus. Comm.,101 Ohio St.3d 195, 2004-Ohio-737. That is the only new and changed circumstance sufficient to re-entitle a worker to TTD compensation based upon an allowed condition that has previously reached MMI. Id.
 {¶ 28} Here, there is no claim to new and changed circumstances with respect to the bilateral girdle sprain and lumbar sprain that the commission found to be at MMI effective May 5, 2004.
 {¶ 29} Rather, as clearly indicated in the DHO order of February 24, 2005:
* * * The injured worker asserts that temporary total disability compensation is payable based on the conditions of rotator cuff tendonitis and subacromial bursitis, which were added to the claim after temporary total disability compensation was terminated. * * *
 {¶ 30} Thus, by her January 3, 2005 motion for reinstatement of TTD compensation, claimant undertook the burden of showing that either the tendonitis or bursitis conditions, or both, independently caused TTD during the period of the new request for TTD compensation following the MMI decision. Claimant cannot show entitlement to TTD compensation by even a partial reliance upon the allowed conditions that have previously been found to be at MMI. State ex rel. Grogan v. Indus. Comm., Franklin App. No. 03AP-142, 2004-Ohio-543.
 {¶ 31} The commission's granting of an additional claim allowance after a finding of MMI may be cause for resuming TTD compensation if the new claim allowance is not at MMI and other requirements for TTD compensation are met. See State ex rel.Basye v. Indus. Comm. (1992), 64 Ohio St.3d 68; State ex rel.Richardson v. Quarto Mining Co. (1995), 73 Ohio St.3d 358. However, the granting of an additional claim allowance after a finding of MMI does not automatically resume TTD compensation.State ex rel. Vance v. Marikis (1999), 86 Ohio St.3d 305.
 {¶ 32} A review of the record before this court discloses that there is no medical evidence showing that either the tendonitis or bursitis conditions, or both, have ever caused TTD independently of the allowed conditions that have been determined to have reached MMI and independently of the disallowed condition of the claim.
 {¶ 33} As previously noted in her January 3, 2005 motion, claimant cited to Dr. Sardo's office notes of March 9, July 13, August 10, October 7 and November 4, 2004, and to Dr. Lefkowitz's office note of June 22, 2004. None of those office notes indicate that one or both of the newly allowed conditions are independently causing an inability to return to the former position of employment.
 {¶ 34} In his March 9, 2004 office note (that predates the claimed period of disability at issue), Dr. Sardo wrote:
A[SSESSMENT:]
[One] Chronic right shoulder strain.
[Two] Chronic lumbar sprain. Evidence of underlying degenerative disc disease.
[Three] Disability. Given her current condition she will be unable to return to work at this time.
In his August 10, 2004 office note, Dr. Sardo wrote:
ASSESSMENT:
[One] Chronic right shoulder strain with subacromial bursitis.
[Two] Chronic lumbar strain with degenerative disc disease.
[Three] Disability.
In his October 7, 2004 office note, Dr. Sardo wrote:
ASSESSMENT:
[One] Chronic right shoulder strain with developing contracture. Underlying subacromial bursitis.
[Two] Chronic lumbar strain with D[egenerative] D[isc] D[isease].
[Three] Disability.
[Four] Depression and anxiety related to chronic pain.
In his November 4, 2004 office note, Dr. Sardo wrote:
ASSESSMENT:
[One] Chronic right shoulder strain with developing contracture. Her right shoulder abduction was limited to about 80°.
[Two] Chronic lumbar strain with D[egenerative] D[isc] D[isease].
[Three] Disability.
[Four] Depression and anxiety.
 {¶ 35} In his office notes, Dr. Sardo's assessments reference nonallowed and disallowed conditions. None of the office notes cited by claimant in her January 3, 2005 motion indicate that one or both of the newly allowed conditions independently caused TTD.
 {¶ 36} Moreover, a review of the ICD-9 codes listed by Dr. Sardo on all his C-84s of record discloses that none of Dr. Sardo's C-84s indicate that one or both of the newly allowed conditions are independently causing TTD. Two examples illustrate the problem.
 {¶ 37} Dr. Sardo's C-84 dated January 4, 2005 (the day following claimant's January 3, 2005 motion), lists only ICD-9 codes 840.9 and 847.2 as the allowed conditions being treated which prevent a return to work. The record clearly shows that ICD-9 codes 840.9 and 847.2 relate respectively to a bilateral shoulder sprain and a lumbar sprain which are the allowed conditions found to have reached MMI. (See Stipulated Record, at 34, 47 and 53.) Thus, Dr. Sardo's C-84 dated January 4, 2005 cannot support TTD for the time period at issue.
 {¶ 38} The other example is Dr. Sardo's C-84 dated February 23, 2005. On that C-84, Dr. Sardo certifies TTD from March 19, 2004 to March 20, 2005. On that C-84, Dr. Sardo lists ICD-9 codes 840.9, 847.2, 722.52, 726.10 and 726.19 as the allowed conditions being treated which prevent a return to work. The record discloses that Dr. Sardo reports the rotator cuff tendonitis under ICD-9 code 726.10 and the aggravation of lumbar degenerative disc disease under ICD-9 code 722.52. (Stipulated Record, at 83.) Presumably, Dr. Sardo reports the bursitis condition under ICD-9 code 726.19.
 {¶ 39} Clearly, Dr. Sardo's C-84 dated February 23, 2005, fails to opine that either the tendonitis or bursitis conditions, or both, independently caused TTD. By including ICD-9 codes 840.9, 847.2 and 722.52 with the ICD-9 codes for the additionally allowed tendonitis and bursitis conditions, Dr. Sardo has failed to opine that the tendonitis and bursitis conditions independently caused TTD. See State ex rel. Bradley v. Indus.Comm. (1997), 77 Ohio St.3d 239, 242.
 {¶ 40} In short, as previously stated, there is no medical evidence in the record showing that one or both of the additional allowances independently caused TTD. Clearly, claimant simply presented no evidence to support her January 3, 2005 motion for reinstatement of TTD compensation following the May 5, 2004 finding of MMI.
 {¶ 41} Here, RMS does not challenge the medical evidence relied upon by the commission on the basis that neither Drs. Sardo nor Lefkowitz ever opined that one, or both, of the additionally allowed conditions independently caused TTD. This is so, notwithstanding that the SHO order of April 20, 2005 states: "The C-84 reports from Dr. James Sardo on file from 2004-2005 support the award of temporary total disability compensation."
 {¶ 42} Rather, citing State ex rel. Clark v. Indus. Comm.
(1995), 72 Ohio St.3d 377, RMS claims that Dr. Sardo's C-84s cannot support reinstatement of TTD, because allegedly Dr. Sardo was confused as to claimant's former position of employment. RMS points out that, in his March 9, 2004 office note, Dr. Sardo correctly notes that claimant works "in home health care." However, in his C-84s dated February 23 and April 6, 2005, Dr. Sardo incorrectly reports the former position of employment as "cashier." In all his other C-84s of record, Dr. Sardo fails to state claimant's position of employment at the time of injury.
 {¶ 43} Apparently, RMS raised this issue administratively at the April 20, 2005 hearing before the SHO, because the SHO order states:
* * * Although Dr. Sardo stated at the top of the C-84 that position of employment at the time of the injury was as a cashier, this does not defeat the purpose of the multiple C8-4 reports. The injured worker states this was a typographical error and Dr. Sardo was well aware of her job as a health care worker when he signed the C-84 estimates of disability. In addition, the job of cashier would be a much lighter type work than as a health care worker which involves repetitive heavy lifting and more physically demanding type of work. Therefore, even if Dr. Sardo believed she formerly worked as a cashier when she was injured, his estimate would be even more restrictive than if he had placed health care worker at the top of the C-84 reports.
 {¶ 44} In Clark, at 379, the court applied a legal principle from State ex rel. Braswell v. Indus. Comm. (1986),25 Ohio St.3d 61, 63:
"[A] physician conducting a medical examination, where the claimant seeks temporary total disability benefits, should, in most cases, possess some knowledge of the physical requirements associated with the former position of employment[.] [W]e deem it unnecessary for the physician to trace, in detail, every physical movement necessitated during the average workday." * * *
 {¶ 45} The issue in Clark was whether Dr. Dobrowski's report satisfied Braswell. In his report, Dr. Dobrowski opined that the claimant "could return to his previous position as a construction worker." Id. at 378. He also noted that the claimant was injured "pushing an air compressor." Id. Concluding that Dr. Dobrowski's report satisfied Braswell, the Clark court states, at 380:
Claimant responds that "construction worker" is too general a term, claiming that it encompasses many different duties entailing many different levels of physical exertion. While this may be true, there is no evidence that Dr. Dobrowski misperceived claimant's duties to the detriment of any interested party. There is no indication that Dr. Dobrowski based his conclusion on the erroneous belief that claimant's occupation consisted of sedentary, light or medium work. To the contrary, Dr. Dobrowski noted that claimant was injured while pushing an air compressor — a heavy piece of machinery. Accordingly, we find that the report was "some evidence" supporting the commission's decision.
 {¶ 46} Here, Dr. Sardo's office notes are replete with information indicating that Dr. Sardo was aware of the duties of claimant's former position of employment. On July 9, 2003, claimant's first visit with Dr. Sardo, Dr. Sardo noted: "She was injured on 05/16/03 when attempting to help a client up out of a couch." On July 15, 2003, Dr. Sardo noted again that the injury occurred "when she was attempting to help a client up out of a couch." Dr. Sardo also wrote on July 15, 2003: "She was previously working as a home health aide for RMS." On August 26, 2003, Dr. Sardo wrote: "She worked in home health care." On September 5, 2003, Dr. Sardo wrote on a Physician's Report of Work Ability form that claimant's occupation is "Home Health Aide." Again, on March 9, 2004, Dr. Sardo wrote: "She would be unable to return to work in home health care."
 {¶ 47} In the magistrate's view, it is significant that the two errors identifying the former position of employment as that of "cashier" occurred later during Dr. Sardo's care of claimant. The two errors are on the C-84s dated February 23 and April 6, 2005, when the period of the TTD award at issue is from August 24, 2004 to April 20, 2005.
 {¶ 48} On a C-84 dated January 4, 2005, Dr. Sardo certified TTD from December 20, 2004 to March 19, 2005. While the C-84 dated January 4, 2005 does not contain a description of the former position of employment, there is, nevertheless, a presumption that Dr. Sardo correctly understood the former position of employment to be in keeping with his office notes which consistently indicate that the former position of employment is that of a home health aide for RMS. In fact, there is no office note indicating that Dr. Sardo actually believed that claimant was working as a cashier.
 {¶ 49} Given that Dr. Sardo's office notes show that he consistently understood claimant's former position of employment, it was well within the commission's fact-finding discretion to conclude that the C-84s dated February 23 and April 6, 2005, do not indicate that Dr. Sardo misunderstood the former position of employment. There is clearly some evidence to support the commission's finding that Dr. Sardo correctly understood the former position of employment notwithstanding the errors on the two C-84s.
 {¶ 50} Given that RMS's only challenge to the medical evidence must fail, RMS's request for a writ of mandamus must be denied.
 {¶ 51} Turning now to the request for a writ of mandamus in case No. 05AP-785, claimant argues that the commission abused its discretion by starting TTD compensation as of August 24, 2004, the date the commission said was the filing date of claimant's C-86 motion for the allowance of the additional conditions. (The filing date was actually August 20, 2004.) According to claimant, the commission should have began TTD compensation as of June 20, 2004, the date following the end of the period of wage continuation payments. (Wage continuation payments were made by RMS through June 19, 2004.)
 {¶ 52} According to claimant, the filing date of the motion for the allowance of the additional conditions cannot control the start date for reinstatement of TTD compensation based upon the allowance of the additional conditions because the medical evidence the commission relied upon to support the additional claim allowances predates the filing date of the motion. (As previously noted, the commission relied upon the June 22, 2004 report of Dr. Lefkowitz and the July 15, 2004 report of Dr. Sardo to support the additional claim allowances.)
 {¶ 53} Claimant's argument for an earlier start date for the TTD award might be persuasive if claimant had submitted medical evidence showing that either the tendonitis or bursitis conditions, or both, independently caused TTD. Because there is no medical evidence in the record to support an earlier start date, claimant's request for a writ of mandamus must be denied.
 {¶ 54} In short, neither RMS nor claimant has presented a persuasive argument for the issuance of a writ of mandamus.
 {¶ 55} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny the requested writs of mandamus.